UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| INTERNATIONAL CORRUGATED AND PACKING SUPPLIES, INC., §§§§§<br>Plaintiff, §<br>v. §§<br>LEAR CORPORATION and LEAR MEXICAN SEATING CORPORATION, *formerly known as* LEAR TRIM, L.P., §§§§§<br>Defendants. § | EP-15-CV-00405-DCG |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendants Lear Corporation and Lear Mexican Seating Corporation's (collectively "Defendants") "Motion to Compel Arbitration and to Dismiss or, in the Alternative, Stay Proceedings" ("Defendants' Motion to Compel Arbitration") (ECF No. 19), filed on August 22, 2016. Plaintiff International Corrugated and Packing Supplies, Inc. ("Plaintiff") filed a response ("Response") (ECF No. 23) on September 8. Defendants filed a reply ("Reply") (ECF No. 25) on September 15. The Court issued an "Order for Supplemental Briefs" ("Order") (ECF No. 26) on September 30. Pursuant to that Order, Defendants filed their Supplemental Brief ("Defendants' Supplemental Brief") (ECF No. 29) on October 14. Following an extension of time, Plaintiff filed its Supplemental Brief ("Plaintiff's Supplemental Brief") (ECF No. 34) on November 7. Thereafter, Defendants filed a response to Plaintiff's Supplemental Brief ("Defendants' Response to Plaintiff's Supplemental Brief") (ECF No. 38) on November 14. Having considered the parties' arguments, in view of the applicable law, the Court **DENIES** Defendants' Motion to Compel Arbitration.

## I. BACKGROUND

Plaintiff, a Texas corporation, sells packaging materials that its customers use to ship products. Notice of Removal at 1, ECF No. 1; *see also* Pl.'s Resp. at 2. Defendants are Delaware corporations with their principal places of business in Michigan and are suppliers of seats and electrical components to automobile manufacturers. Defs.' Mot. to Compel Arbitration at 2, 6. From approximately April 2007 through November 2014, Defendants purchased packaging materials from Plaintiff. *Id.* at 2. The parties' dispute is based on payments allegedly owed by Defendants to Plaintiff for the purchase of those materials. *See id.* at 2–5.

Currently at issue is whether the Court should compel arbitration to resolve this dispute. *See id.* at 1–10. Defendants argue that the Court should compel arbitration based on an arbitration clause contained in Defendants' March 1, 2006 Purchase Order Terms and Conditions ("the Terms and Conditions"), which were purportedly incorporated by reference into various purchase orders through a statement on the purchase orders and a link to Defendants' website where the Terms and Conditions could be found. *Id.* at 7–8. The arbitration clause in the Terms and Conditions states:

> All disputes arising under or in connection with any Order or any other document pertaining to any Order shall be finally settled by arbitration in Southfield, Michigan, before a single arbitrator appointed by the American Arbitration Association ("AAA") which arbitration shall be conducted under AAA's commercial arbitration rules then in effect at the time of the Order provided, however, that discovery shall be permitted in accordance with the United States Federal Rules of Civil Procedure.

*Id.*, Ex. 2 ¶ 51, ECF No. 19-2. It is undisputed that no employee from Plaintiff signed the Terms and Conditions containing the arbitration clause. *See* Pl.'s Resp. at 2–3; Pl.'s Suppl. Br., Ex. 6, Aff. of Ray Hernandez Jr., ECF No. 34; Defs.' Reply at 2–4; *Id.*, Attach. 2–23 to Ex. A, ECF No. 25-1.

## II.  APPLICABLE LAW

The Federal Arbitration Act ("FAA") requires the Court to enforce an arbitration agreement in the same manner that it would enforce any other contract.  *See* 9 U.S.C. §§ 1–16; *Specialty Healthcare Mgmt., Inc. v. St. Mary Par. Hosp.*, 220 F.3d 650, 654 (5th Cir. 2000).

Specifically, the FAA provides that:

> A party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

When adjudicating a motion to compel arbitration, the Court is directed to engage in a two-step analysis. *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). The Court must first "determine whether parties agreed to arbitrate the dispute." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013).  This determination is guided by two questions "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement?" *Id.* (quoting *Sherer v. Green Tree Servicing LLC*, 548 F.3d 378, 381 (5th Cir. 2008)).  Federal courts adopt state law contract principles when determining the validity of an agreement to arbitrate. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (*per curiam*) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Thus, "the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate." *Klein*, 710 F.3d at 266.  Once the Court determines that the parties agreed to arbitrate their dispute, the Court must "consider whether any federal statute or policy renders [Plaintiff's] claims nonarbitrable." *Bailey*, 364 F.3d at 263.

## III. ANALYSIS

Defendants raise two main arguments in support of their Motion to Compel Arbitration: (1) the Terms and Conditions, which contain the arbitration clause, were incorporated by reference into valid contracts between the parties, and (2) Defendants did not waive their right to arbitration.[1] *See* Defs.' Mot. to Compel Arbitration at 1–10; Defs.' Reply at 2–10; Defs.' Suppl. Br. at 2–10; Defs.' Resp. to Pl.'s Suppl. Br. at 2–7. Defendants' support their first argument by maintaining that unsigned documents may be incorporated by reference into a contract. Defs.' Reply at 3 (citing *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968); *Naturipe Foods, LLC v. Siegel Egg Co.*, Docket No. 327172, 2016 WL 4723312, at *2 (Mich. Ct. App. Sept. 8, 2016)).

As a threshold matter, Defendants' Motion to Compel Arbitration raises the issue of whether the Court should apply Texas or Michigan law to determine whether there was an agreement to arbitrate. *See* Defs.' Mot. to Compel Arbitration at 5–8. Accordingly, the Court addresses choice-of-law before turning to the issue of whether the parties agreed to arbitrate.

### A. *Choice-of Law*

When deciding matters of state law, a federal court sitting in diversity jurisdiction must follow the choice-of-law rules prevailing in the state in which it sits. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (citing *Spence v. Glock, Ges.m.b.H*, 227 F.3d 308, 311 (5th Cir. 2000)). Therefore, this Court applies Texas choice-of-law rules.

In contract cases where the parties have agreed to an enforceable choice-of-law clause, Texas law generally gives effect to the parties' choice-of-law clause. *Spence*, 227 F.3d at 315; *Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990)); *see also* Restatement

---

[1] As discussed below, because the Court finds that Defendants failed to meet their burden to establish by a preponderance of the evidence the existence of an agreement to arbitrate, the Court declines to address the issue of waiver.

(Second) of Conflicts of Laws § 187. Conversely, in cases where the parties have not agreed to an enforceable choice-of-law clause, "the law of the state with the most significant relationship to the particular substantive issue will be applied." *Resolution*, 958 F.2d at 1318 (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)). If there is no conflict, however, between the laws of the forum state (here, Texas) and the other state in question (here, Michigan), "then no choice-of-law analysis is necessary," and the court simply applies the law of the forum state. *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) (quoting *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990); *Nat'l Union Fire Ins. v. CNA Ins.*, 28 F.3d 29, 32 n.3 (5th Cir. 1994)).

Defendants argue that Michigan law applies to whether the parties agreed to arbitrate based on a choice-of-law clause, which, like the arbitration clause, was contained in the Terms and Conditions. Defs.' Mot. to Compel Arbitration at 5–8. As further support, Defendants point out that their principle places of business are in Michigan. *Id.* at 6. Plaintiff, on the other hand, counters by stating that nothing regarding the transactions occurred in Michigan, no witnesses live in Michigan, and no evidence exists in Michigan relating to this dispute. Pl.'s Resp. at 6. Plaintiff supports all of its arguments by citing Texas law. *See* Pl.'s Resp. at 1–7; Pl.'s Suppl. Br. at 1–12.

The Court finds that Texas law should apply in this case for several reasons. First, the Court declines to apply Michigan law based on the choice-of-law clause because that clause is contained in the Terms and Conditions—the very document Plaintiff contends is not properly incorporated by reference into the parties' agreements. Were the Court to find that the parties *agreed* to an enforceable choice-of-law clause, it would inherently validate the proposition that the Terms and Conditions were properly incorporated by reference into the various purchase

orders. Such reliance on the choice-of-law clause "would therefore amount to bootstrapping." *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 424–25 (S.D.N.Y. 2012) (declining to apply choice-of-law clause contained in general terms and conditions when party challenged same document containing arbitration clause). Consequently, the Court declines to apply Michigan law.

Second, the record before the Court demonstrates that Texas has the most significant relationship to this case. For example, the purchase orders indicate that each company has an address in El Paso, Texas, and that products should be shipped from Plaintiff in El Paso to Defendants also in El Paso. *See* Defs.' Reply, Attach. 2–23 to Ex. A. Conversely, the sole connection to Michigan is the location of Defendants' principle places of business. Defs' Mot. to Compel Arbitration at 6. Indeed, the record is devoid of any other connection to Michigan, and it appears that everything related to the transactions at issue took place in Texas. Thus, because Texas has the most significant relationship to this case, the Court should apply Texas law.

Finally, despite arguing for the application of Michigan law in their initial motion papers, Defendants' Reply and Supplemental Brief suggest that there is no conflict between Texas and Michigan law. *See* Defs.' Reply at 3 & n.2; Defs.' Suppl. Br. at 2. As it does not appear that any conflict exists between Texas and Michigan law, the Court will apply Texas law to the remainder of the analysis. *Schneider Nat'l Transp.*, 280 F.3d at 536.

**B. *Defendants Have Failed to Meet Their Burden to Establish the Existence of an Agreement to Arbitrate***

Defendants assert that the Terms and Conditions, which contain the arbitration clause, were incorporated by reference into the purchase orders relating to the parties' transactions. *See* Defs.' Mot. to Compel Arbitration at 7–8; Defs.' Reply at 2–4; Defs.' Suppl. Br. at 2–8; Defs.'

Resp. to Pl.'s Suppl. Br. at 2–5. Plaintiff contends that no agreement to arbitrate existed because, among other things, the doctrine of incorporation by reference requires a signed contract and no employee of Plaintiff signed the purchase orders. *See* Pl.'s Suppl. Br. at 8–9. The Court disagrees with Defendants and will deny Defendants' Motion to Compel Arbitration.

Under Texas law, the party seeking to compel arbitration bears the burden to establish the existence of an agreement to arbitrate. *Ffrench v. PricewaterhouseCoopers Corp. Fin., LLC*, Civ. A. No. H-12-0291, 2012 WL 1900930, at *2 (S.D. Tex. May 24, 2012) (citing *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism'd by agr.)); *Weiner v. Citigroup*, Civ. A. No. 3:01CV2246-M, 2002 WL 655531, at *2 (N.D. Tex. Apr. 19, 2002) (citing *Henry*, 18 S.W.3d at 688–89). The party seeking to compel arbitration must prove by a preponderance of the evidence that such an agreement exists. *See Ffrench*, 2012 WL 1900930, at *2 (citing *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005)).

One way to prove the existence of an agreement to arbitrate is through the doctrine of incorporation by reference. *See Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 419–21 (5th Cir. 2014) (analyzing whether a set of terms and conditions containing an arbitration clause was incorporated by reference into a contract). Under that doctrine, "an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged." *Owen*, 433 S.W.2d at 166. Stated another way, the contract that allegedly incorporates another, unsigned document must, in the first instance, be a signed, enforceable contract.[2] *See id.* Thus, in order to

---

[2] Defendants heavily rely upon *One Beacon Insurance Company v. Crowley Marine Services*, 648 F.3d 258 (5th Cir. 2011), to support their argument that the Terms and Conditions were properly incorporated by reference into the unsigned purchase orders. *See* Def.'s Reply at 5–6; Defs.' Suppl. Br. at 4–6; Defs.' Resp. to Pl.'s Suppl. Br. at 4–5. Conversely, Plaintiff maintains that the doctrine of incorporation by reference requires a signed contract to incorporate another unsigned document. *See* Pl.'s Suppl. Br. at 8–9 (citing *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.)). To the extent that Defendants rely upon *One Beacon*, the Court finds that case unpersuasive in the instant, distinguishable circumstance because *One Beacon* involved a

establish the existence of a contract for purposes of the doctrine of incorporation by reference, a party must prove the following elements: (1) an offer; (2) acceptance of that offer; (3) mutual assent or a meeting of the minds on the subject matter and essential terms; and (4) consideration. *See Int'l Metal Sales, Inc. v. Glob. Steel Corp.*, No. 03-07-00172-CV, 2010 WL 1170218, at *7 (Tex. App.—Austin Mar. 24, 2010, pet. denied) (citations omitted). Furthermore, whereas here the purported contracts are for the sale of goods,[3] the "general principles governing contract formation are augmented by [Chapter 2] of the Texas [Business and Commerce Code]."[4] *Id.* (analyzing how and when contracts were formed under the Texas Business and Commerce Code in determining whether a forum selection clause was part of a contract).

As a preliminary matter, the majority of the parties' contentions regarding the formation of the underlying contracts amount to mere attorney arguments unsupported by any competent evidence,[5] *see* Def.'s Mot to Compel Arbitration at 2–3; Pl.'s Suppl. Br. at 5, which the Court

---

contract for repair services and relies on maritime law and general contract principles rather than Texas law to reach its decision regarding the doctrine of incorporation by reference. *See* 648 F.3d at 261–62, 266–71; *cf. Bob Montgomery*, 409 S.W.3d at 193 (distinguishing *One Beacon* by noting that it involved maritime law and "purported to apply general contract principles" rather than Texas contract law). Consequently, the Court finds *One Beacon* inapposite.

[3] Courts have applied the Uniform Commercial Code to contracts for the sale of packaging materials. *See, e.g., Starbucks Corp. v. Amcor Packaging Distrib.*, Civ. A. No. 2:13-1754 WBS CKD, 2016 WL 3543371, at *1–3 (E.D. Cal. June 24, 2016) (in an action against a manufacturer and distributor of packaging materials, the court found that contracts for wooden pallets used in shipping were "goods" within the definition of California's version of the Uniform Commercial Code); *Econ. Folding Box Corp. v. Anchor Frozen Foods, Corp.*, Civ. A. No. 04 CV 4485, 2007 WL 844878, at *1–14 (N.D. Ill. Mar. 19, 2007) (in action against seller of packaging materials, the court applied the Illinois' version of the Uniform Commercial Code to the sale of custom shipping boxes); *cf.* Tex. Bus. & Com. Code § 2.105(a) (defining "goods").

[4] The Court observes that neither party addresses the application of the Texas Business and Commerce Code, despite the fact that the parties' agreements concern the sale of goods.

[5] For example, Defendants' Motion to Compel Arbitration asserts that the process for ordering packaging materials from Plaintiff went as follows: (1) Defendants would generate a purchase order when it needed product, enter it into their accounting system, and e-mail it to Plaintiff; (2) Plaintiff would fill the order and generate a packing slip; (3) a third-party trucking company driver would sign the packing slip; (4) the driver would deliver Plaintiff's packaging materials to Defendants' warehouse and the

declines to consider, *see D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 457 (5th Cir. 2010); *Reyes v. Thrifty Motors, Inc.*, No. 01-15-00699-CV, 2016 WL 3571101, at *4 (Tex. App.—Houston [1st Dist.] June 30, 2016, no pet.) (citations omitted). Therefore, in determining whether Defendants have met their burden of proof, the Court considers only the competent evidence that the parties submitted, which includes affidavits and copies of purchase orders. *See* Defs.' Reply, Ex. A, Aff. of Larry Vano, ECF No. 25–1; *Id.*, Attach. 2–23 to Ex. A; Pl.'s Suppl. Br., Ex. 6, Aff. of Ray Hernandez, Jr.

Specifically, to support the existence of an agreement to arbitrate through incorporation by reference, Defendants rely on: (1) an affidavit by Larry Vano, Defendants' Vice President of North America Purchasing, who declares that all purchases by Defendants from Plaintiff were made pursuant to purchase orders; and (2) copies of the purchase orders. Defs.' Reply, Ex. A, Aff. of Larry Vano at 1; *Id.*, Attach. 2–23 to Ex. A. Plaintiff counters with an affidavit by Ray Hernandez, Jr., its Operations Manager, who affirms that Defendants ordered materials as follows: (1) Plaintiff would receive a telephone call or e-mail from Defendants requesting delivery; (2) Plaintiff would assemble the requested products and send them out on a truck for delivery; and (3) when the products were delivered, Defendants would enter it into their computer and send payment by direct deposit on the fourth of every month. Pl.'s Suppl. Br., Ex. 6, Aff. of Ray Hernandez, Jr. at 1–2.

The Court finds that Mr. Vano's affidavit and copies of the purchase orders fail to demonstrate that the Terms and Conditions were properly incorporated by reference into the

---

packing slip would be stamped; (5) the stamped packing slip would be used to generate a material receipt transaction in Defendants' accounting system and would be matched to the purchase order; (6) the material receipt transaction would be used to generate an open voucher to Plaintiff, which would be paid in the course of business; and (7) no invoices or bills were sent to Defendants by Plaintiff. Defs.' Mot. to Compel Arbitration at 2–3. Likewise, Plaintiff, for example, states that Defendants "issue[] purchase order[s] occasionally, sometimes before a purchase, sometime[s] after, sometimes not at all." Pl.'s Suppl. Br. at 5.

underlying contracts in order to establish that the parties agreed to arbitrate. For example, the affidavit fails to explain, in sufficient detail, how the process of ordering materials from Plaintiff began and continued during the parties' relationship or when each purchase order was sent in that process. *See* Defs.' Reply, Ex. A, Aff. of Larry Vano. Mr. Hernandez's affidavit indicates that purchase orders may have had no role in the parties' agreements because, as Mr. Hernandez affirms, Defendants' purchases were made through telephone calls or e-mails and products were shipped in response. Pl.'s Suppl. Br., Ex. 6, Aff. of Ray Hernandez, Jr. at 1–2. Thus, based on Plaintiff's description of how and when the underlying contracts were formed, it appears that the Terms and Conditions and its provisions would be inapplicable to the parties' agreements because purchase orders were not sent prior to Plaintiff's shipment of goods to Defendant. *See Tubelite v. Risica & Sons, Inc.*, 819 S.W.2d 801, 802–05 (Tex. 1991) (holding that an interest provision, contained in an acknowledgement sent after the parties formed a contract through a price quotation and responsive letter, was not part of contract and did not apply to the buyer); *Int'l Metal*, 2010 WL 1170218, at *4–9 (holding that a forum selection clause, contained in a set of terms stated on invoices, were not part of underlying contracts because the parties had formed contracts through purchase orders and shipments of goods prior to the buyer receiving invoices containing the forum selection clause). Moreover, the purchase orders do not indicate when, if ever, that Plaintiff received each purchase order insofar as they do not contain any acknowledgment or signature by an employee of Plaintiff. *See* Defs.' Reply, Attach. 2–23 to Ex. A. Consequently, the Court finds that Defendants have failed to meet their burden to establish by a preponderance of the evidence the existence of an agreement to arbitrate.

Even assuming *arguendo* that Plaintiff received the purchase orders in question and responded to the purchase orders by shipping goods, Defendants fail to state, much less adduce

evidence to show, whether any prior discussions took place before sending purchase orders or the precise timing of when the purchase orders were sent, which may ultimately impact how the underlying contracts were formed under the Texas Business and Commerce Code. *See Int'l Metal*, 2010 WL 1170218, at *7 (The "general principles governing contract formation are augmented by [Chapter 2] of the Texas [Business and Commerce Code]."). For example, the parties may have had prior discussions agreeing to certain terms of their transactions and purchase orders were sent merely to confirm those discussions before Plaintiff shipped goods to Defendants. *See, e.g.*, Tex. Bus. & Com. Code §§ 2.201(b) (explaining how to satisfy § 2.201(a) through a written confirmation between merchants), 2.207(a) (indicating that a written confirmation can constitute acceptance). Defendants moreover fail to address any potential issues with the Texas Business and Commerce Code regarding the lack of signed writings given that some of the purchase orders concern the sale of goods of $500 or more. *See id.* § 2.201(a) (requiring a signed writing for a contract involving the sale of goods of $500 or more).

In conclusion, the Court finds that Defendants have failed to demonstrate that the Terms and Conditions, which contain the arbitration clause, were properly incorporated by reference into the parties' contracts because Defendants have not established sufficient details regarding how and when the underlying contracts were formed. The lack of analysis by Defendants leaves the Court assuming how and when the underlying contracts were formed and, based on that decision, whether the doctrine of incorporation by reference establishes the existence of an agreement to arbitrate. *Cf. Barker v. Norman*, 651 F.2d 1107, 1129, n.26 (5th Cir. Unit A. July, 1981) ("[A] district judge . . . is neither required nor permitted to be counsel for any party, whether that party is appearing pro se or through counsel."). As a result, the Court holds that Defendants failed to meet their burden to establish by a preponderance of the evidence the

existence of an agreement to arbitrate. *See Ffrench*, 2012 WL 1900930, at *2 (citing *Banks*, 435 F.3d at 540). Therefore, Defendants' Motion to Compel Arbitration must be denied.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED THAT** Defendants Lear Corporation and Lear Mexican Seating Corporation's "Motion to Compel Arbitration and to Dismiss or, in the Alternative, Stay Proceedings" (ECF No. 19) is **DENIED**.

So ORDERED and SIGNED this 21ST day of December 2016.

_____
DAVID C. GUADERRAMA
**UNITED STATES DISTRICT JUDGE**