UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| INTERNATIONAL CORRUGATED AND PACKING SUPPLIES, INC., | § § § § § § § § § § § § § § | |
|---|---|---|
| Plaintiff, | | |
| | | EP-15-CV-00405-DCG |
| v. | | |
| LEAR CORPORATION and LEAR MEXICAN SEATING CORPORATION, *formerly known as* LEAR TRIM, L.P., | | |
| Defendants. | | |

## ORDER

Presently before the Court is Defendants Lear Corporation and Lear Mexican Seating Corporation's (collectively "Defendants") "Motion to Reconsider December 21, 2016, Memorandum [Opinion] and Order Regarding Arbitration" ("Motion to Reconsider") (ECF No. 48) filed on February 10, 2017. For the reasons that follow, the Court **DENIES** Defendants' Motion to Reconsider.

### I. BACKGROUND

Plaintiff, a Texas corporation, sells packaging materials that its customers use to ship products. Notice of Removal at 1, ECF No. 1; *see also* Pl.'s Resp. Defs.' Mot. Compel Arbitration at 2, ECF No. 23. Defendants are Delaware corporations with their principal places of business in Michigan and are suppliers of seats and electrical components to automobile manufacturers. Defs.' Mot. Compel Arbitration at 2, 6, ECF No. 19. From approximately April 2007 through November 2014, Defendants purchased packaging materials from Plaintiff. *Id.* at

2. The parties' dispute is based on payments allegedly owed by Defendants to Plaintiff for the purchase of those materials. *See id.* at 2–5.

Currently at issue is whether the Court should compel arbitration to resolve this dispute. *See id.* at 1–10. Defendants argue that the Court should compel arbitration based on an arbitration clause contained in Defendants' March 1, 2006, Purchase Order Terms and Conditions (the "Terms and Conditions"), which were purportedly incorporated by reference into various purchase orders through a statement on the purchase orders and a link to Defendants' website where the Terms and Conditions could be found. *Id.* at 7–8. The arbitration clause in the Terms and Conditions states:

> All disputes arising under or in connection with any Order or any other document pertaining to any Order shall be finally settled by arbitration in Southfield, Michigan, before a single arbitrator appointed by the American Arbitration Association ("AAA") which arbitration shall be conducted under AAA's commercial arbitration rules then in effect at the time of the Order provided, however, that discovery shall be permitted in accordance with the United States Federal Rules of Civil Procedure.

*Id.*, Ex. 2 ¶ 51. It is undisputed that Plaintiff did not sign the purchase orders or the Terms and Conditions containing the arbitration clause. *See* Pl.'s Resp. Defs.' Mot. Compel Arbitration at 2–3; Defs.' Reply Defs.' Mot. Compel Arbitration at 2–4, ECF No. 25; Defs.' Mot. Reconsider at 6–10.

On August 22, 2016, Defendants filed a Motion to Compel Arbitration. On December 21, the Court issued a Memorandum Opinion and Order denying the Motion to Compel Arbitration because Defendants failed to meet their burden to establish the existence of an agreement to arbitrate.[1] Mem. Op. & Order at 6–12, ECF No. 42. On February 10, 2017, Defendants sought reconsideration to address issues the Court raised in its decision regarding

---

[1] As Defendants failed to meet their burden, the Court declined to rule on whether Defendants waived their right to arbitrate. Mem. Op. & Order at 4 & n.1.

how and when the underlying contracts were formed. *See* Defs.' Mot. Reconsider at 2 ("First, Lear provides evidence that confirms for the Court ... [how] the contract was formed .... Second, Lear lays to rest the Court's concerns that [International Corrugated and Packing Supplies, Inc.] may have not had proper notice of the Lear Terms and Conditions before it accepted Lear's offer by shipping the goods at issue, thus forming the contract at issue."). By its Order dated February 16, 2017, the Court denied Defendants' Motion to Reconsider under Federal Rule of Civil Procedure 54(b) using a standard analogous to that of Rule 59, the rule governing motions to alter orders post-judgment. Order at 2–3, 6, ECF No. 64. On August 9, 2017, the Fifth Circuit vacated and remanded the Court's denial of Defendants' Motion to Reconsider to allow the Court to reconsider the motion in light of the new standard announced in *Austin v. Kroger Texas, L.P.*, 864 F.3d 326 (5th Cir. 2017) (*per curiam*). *Int'l Corrugated & Packing Supplies, Inc. v. Lear Corp.*, No. 17-50139, 2017 WL 3432027, at *2 (5th Cir. Aug. 9, 2017) (*per curiam*) ("The district court did not have the benefit of our opinion in *Austin* clarifying the difference between these standards. Rather than engage in a proper Rule 54(b) analysis in the first instance, we conclude that the district court should have the opportunity to do so applying the proper standards.").

## II. LEGAL STANDARD

While the Federal Rules of Civil Procedure do not specifically provide for a motion for reconsideration in the context of interlocutory orders, courts generally assess whether a motion for reconsideration is proper under Federal Rule of Civil Procedure 54(b). *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) (discussing Fed. R. Civ. P. 54(b)), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (*en banc*) (*per curiam*). Under Rule 54(b), "any order or other decision, however

designated, that adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Fifth Circuit interprets this to mean that "[u]nder Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336 (5th Cir. 2017) (internal quotation marks omitted) (quoting *Lavespere*, 910 F.2d at 185).

### III. ANALYSIS

By the instant motion, Defendants now seek to meet their burden of proof to establish the existence of an agreement to arbitrate. *See* Defs.' Mot. Reconsider at 1–10. Defendants contend that they have provided evidence that shows a course of dealing between the parties that proves that there were enforceable agreements governing the purchase of Plaintiff's packaging materials. *Id.* at 2–6. Further, Defendants assert that the arbitration clause from the Terms and Conditions was incorporated by reference into those enforceable agreements. *Id.* at 6–8. Thus, Defendants argue that they have established the existence of an agreement to arbitrate. Therefore, Defendants aver that the Court should compel arbitration.

The Federal Arbitration Act ("FAA") requires the Court to enforce an arbitration agreement in the same manner that it would enforce any other contract. *See* 9 U.S.C. §§ 1–16; *Specialty Healthcare Mgmt., Inc., v. St. Mary Par. Hosp.*, 220 F.3d 650, 654 (5th Cir. 2000). Specifically, the FAA provides that:

> A party aggrieved by the alleged failure ... of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction ... for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

-4-

When adjudicating a motion to compel arbitration, the Court is directed to engage in a two-step analysis. *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). The Court must first "determine whether parties agreed to arbitrate the dispute." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). This determination is guided by two questions: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement?" *Id.* (quoting *Sherer v. Green Tree Servicing LLC*, 548 F.3d 378, 381 (5th Cir. 2008)). Federal courts adopt state-law contract principles when determining the validity of an agreement to arbitrate. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (*per curiam*) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Thus, "the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate." *Klein*, 710 F.3d at 266. Once the Court determines that the parties agreed to arbitrate their dispute, the Court must "consider whether any federal statute or policy renders [Plaintiff's] claims nonarbitrable." *Bailey*, 364 F.3d at 263.

Under Texas law, the party seeking to compel arbitration bears the burden to establish the existence of an agreement to arbitrate. *Ffrench v. PricewaterhouseCoopers Corp. Fin., LLC*, Civ. A. No. H-12-0291, 2012 WL 1900930, at *2 (S.D. Tex. May 24, 2012) (citing *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism'd by agr.)); *Weiner v. Citigroup*, Civ. A. No. 3:01CV2246-M, 2002 WL 655531, at *2 (N.D. Tex. Apr. 19, 2002) (citing *Henry*, 18 S.W.3d at 688–89). The party seeking to compel arbitration must prove by a preponderance of the evidence that such an agreement exists. *See Ffrench*, 2012 WL 1900930, at *2 (citing *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005)).

In support of their contention that there is a valid agreement to arbitrate, Defendants explain that they discovered new evidence containing e-mails exchanged between Defendants and Plaintiff that proves that Plaintiff had notice and opportunity to access the Terms and Conditions; therefore, Defendants argue that the Court should compel arbitration. *See* Defs.' Mot. Reconsider at 1–2, 4–5, 10; *see also id.*, Ex. 3 ("Affidavit of Judith Ann Lambertz") at 1–2, ECF No. 54. In support of Defendants' position, Ms. Lambertz, a Litigation Manager at Defendant Lear Corporation, affirms that in 2010, Defendant Lear Corporation expanded a previously-created e-mail archive at its headquarters in Michigan "to include e-mails sent from Lear Mexican Operations in El Paso, Texas." Aff. Judith Ann Lambertz at 1. Ms. Lambertz further declares that sometime in January 2017, she "was asked to search the Lear e-mail archive for e-mails between any Lear entity and International Corrugated & Packing Supplies, Inc." *Id.* That search led to Defendants finding e-mails dated as early as 2010. *See* Defs.' Mot. Reconsider at 5 ("The earliest [date] of [the e-mails identified] was [from] August 30, 2010."); *id.* at 6 ("Lear searched a previously-unaccessed [sic] e-mail archive maintained in Michigan . . . and identified 704 e-mails between Lear and [Plaintiff]."); Aff. of Judith Ann Lambertz at 1. The newly-discovered emails included an email exchange from August 30, 2010, that shows one of Defendants' employees requesting receipt of an email that notes that "all Lear purchases are governed by Lear's Purchase Order Terms and Conditions available at http://lear.covisint.com." Defs.' Mot. Reconsider, Ex. 3, Vol. 6 at 23, ECF No. 59. One of Plaintiff's employees responds to the email saying, "Received!!"[2] *Id.* at 24.

---

[2] The Court contemplated whether the response from Plaintiff's employee could be considered an electronic signature for the purpose of concluding an agreement. *See Stanley D. Bujnoch, Life Estate v. Copano Energy, LLC*, No. 13-15-00621-CV, 2017 WL 6616741, at *5 (Tex. App.—Corpus Christi Dec. 28, 2017, no pet. h.) (providing a detailed discussion analyzing when an email communication qualifies as an electronic signature for the purpose of forming an agreement under Texas law). However, the disclaimer in the email sent by Defendants' employee forecloses this possibility. The disclaimer states:

Nonetheless, even assuming *arguendo* that Defendants have proven enforceable agreements through the course of dealing between the parties, they still have failed to prove a valid agreement to arbitrate. One way to prove the existence of an agreement to arbitrate is through the doctrine of incorporation by reference. *See Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 419–21 (5th Cir. 2014) (analyzing whether a set of terms and conditions containing an arbitration clause was incorporated by reference into a contract). Under that doctrine, "an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged." *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968). Here, Defendants contend that the Terms and Conditions, which contained the arbitration clause, were incorporated by reference into the purchase orders that Defendants argue are enforceable agreements based on the theory of course of dealing. However, neither the purchase orders nor the Terms and Conditions were signed by the party sought to be charged, Plaintiff. *See* Mot. Reconsider at 8–10.

Nevertheless, Defendants assert that no signature was necessary for the Terms and Conditions to be incorporated into the purchase orders and cite to *One Beacon Insurance Company v. Crowley Marine Services, Inc.* in support of that proposition. *Id.* In a well-reasoned opinion, the Fifth Circuit found in *One Beacon* that unsigned terms and conditions were properly incorporated by reference into unsigned repair service orders. *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 270–71 (5th Cir. 2011). However, *One Beacon* was a case governed by admiralty law where the Fifth Circuit applied "general contract principles." *Id.* at 265, 267. Thus, the Fifth Circuit did not apply the Texas version of the doctrine of incorporation

---

"No employee or agent of Lear Corporation . . . is authorized to conclude any legally binding agreement by email. Agreements with Lear are those expressly confirmed in writing as part of a definitive agreement signed by a duly authorized representative of Lear or purchase orders issued by Lear." Defs.' Mot. Reconsider, Ex. 3, Vol. 6 at 23.

by reference. *See Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.) ("*One Beacon* involved maritime law, not Texas law").

Moreover, Texas law is clear that in order to incorporate an unsigned document by reference into another document, the incorporating document[3] must be signed by the party sought to be charged. *See, e.g., Preston Expl. Co. v. GSF, L.L.C.*, 669 F.3d 518, 523–24 (5th Cir. 2012) ("[I]t is uniformly held [under Texas law] that an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged." (internal quotation marks omitted) (quoting *Owen*, 433 S.W.2d at 166)); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) ("We have said before that an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged." (internal quotation marks omitted) (quoting *Owen*, 433 S.W.2d at 166)); *Matador Prod. Co. v. Weatherford Artificial Lift Sys., Inc.*, 450 S.W.3d 580, 593 n.2 (Tex. App.—Texarkana 2014, pet. denied) ("Weatherford also suggests that the terms and conditions were incorporated by reference into the Stimulation Recommendation . . . . [W]hile unsigned documents may be incorporated into the parties' contract by reference in a signed document, the Stimulation Recommendation was not signed."); *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 496 (Tex. App.—Dallas 2011, pet. denied) ("Carr relies on two sections of the Operating Agreement that reference the Development Agreement . . . . [However,] Carr does not claim MCD should be compelled to arbitrate under an incorporation by reference theory. In fact, Carr acknowledges this theory would not succeed since MCD did not sign the Operating Agreement."); *Satre v. Dommert*, 184 S.W.3d 893, 898 (Tex. App.—Beaumont 2006, no pet.) ("An unsigned document containing an arbitration clause .

---

[3] The Court notes that when it uses the term "incorporating document," it means the document containing the reference to the additional unsigned document or documents that the party is attempting to incorporate. In this matter, the purchase orders are the incorporating documents because they reference the Terms and Conditions.

. . may be incorporated by reference into another signed document."). Nonetheless, Defendants argue that a signature is not necessary; rather, the incorporating document need only be enforceable. Mot. Consideration at 6–10. Defendants base their argument on the fact that *Owen v. Hendricks* was a statute of frauds case, while the instant case involves the Uniform Commercial Code ("UCC"). *Id.* at 7. Defendants assert that because an exception to the statute of frauds' signature requirement exists in the UCC and is applicable to the contractual dispute in this matter,[4] a signature is also not necessary for the doctrine of incorporation by reference. *Id.* at 2–3, 7–8.

Nevertheless, the doctrine of incorporation by reference is not governed by the statute of frauds or the UCC.[5] The Texas Supreme Court decided *Owen v. Hendricks* in 1968, but in the fifty years since that decision, neither the Texas Supreme Court nor the Texas Courts of Appeals have issued a single decision holding that the incorporating document need only be enforceable and need not be signed.[6] Rather, as the Fifth Circuit recently stated, "it is *uniformly held* that an

---

[4] Defendants rest their argument upon Texas Business and Commerce Code Section 2.201(c)(3), which states: "A contract which does not satisfy the requirements of Subsection (a) but which is valid in other respects is enforceable with respect to goods for which payment has been made and accepted or which have been received and accepted."

[5] Moreover, Texas courts have applied the state's incorporation by reference doctrine in a wide variety of contexts, including cases where the UCC would apply. *See, e.g.*, *Martinez v. Affordable Seating, Inc.*, 13-16-00103-CV, 2016 WL 6124129, at *2 (Tex. App.—Corpus Christi Oct. 20, 2016, no pet.) (applying the doctrine in a dispute over the purchase of wooden chairs); *LDF Constr., Inc. v. Texas Friends of Chabad Lubavitch, Inc.*, 459 S.W.3d 720, 728 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (applying the doctrine to a dispute over a contract for the remodeling and repairs of a facility); *Prime Tree & Landscaping Servs. v. Americon Servs. Co.*, 01-09-00779-CV, 2011 WL 947004, at *6 (Tex. App.—Houston [1st Dist.] Mar. 17, 2011, no pet.) (applying the doctrine in a dispute over the purchase of dirt for a construction project); *Trico Marine Servs., Inc. v. Stewart & Stevenson Tech. Servs., Inc.*, 73 S.W.3d 545, 549 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (applying the doctrine to a contract for the purchase of engine turbines); *Teal Const. Co./Hillside Villas Ltd. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex. App.—Austin 2001, pet. denied) (applying the doctrine to a contract for the construction of apartment buildings).

[6] Indeed, the Court requested that the parties brief the issue of whether a signature is required on the incorporating document. Order Requiring Additional Briefing at 4, ECF No. 73. Defendants were

unsigned paper may be incorporated by reference in the paper *signed* by the person sought to be charged." *Preston Expl. Co.*, 669 F.3d at 523–24 (emphasis added). This uniform approach to the doctrine of incorporation by reference over the past fifty years leads the Court to draw the inference that had Texas law intended to carve out an exception for an enforceable, unsigned incorporating document, it would have done so. The absence of such an exception binds the Court to applying the law as it is written.[7] Accordingly, when the text of the law is given its

---

unable to provide a case applying Texas law that held that no signature is required. Defendants' Supplemental Brief at 1, ECF No. 74. Likewise, the Court has been unable to locate such a case.

[7] The Court recognizes that there are valid arguments on both sides of this issue and opts to take a cautious approach here. While the use of the word "may" in the incorporation by reference doctrine could be interpreted as only making a signature permissive, the Court interprets "may" to mean that a party choosing to incorporate a document by reference is permissive. *See Owen*, 433 S.W.2d at 166 ("[A]n unsigned paper *may* be incorporated by reference in the paper signed by the person sought to be charged." (emphasis added)). The Court bases this interpretation on the language Texas courts have used in their explanations of the doctrine. *See, e.g., LDF Constr., Inc.*, 459 S.W.3d at 728 ("A valid agreement to arbitrate exists when a signed contract incorporates by reference another document containing the arbitration clause."); *Bob Montgomery Chevrolet, Inc.*, 409 S.W.3d at 189 ("The language in the signed document must show the parties intended for the other document to become part of the agreement."); *Halper v. Univ. of the Incarnate Word*, 90 S.W.3d 842, 845 (Tex. App.—San Antonio 2002, no pet.) ("In order for an unsigned document to be so incorporated, the express language used in the signed document is not important provided the signed document plainly refers to the other writing."). *See also Matador Prod. Co.*, 450 S.W.3d at 593 n.2 ("Weatherford also suggests that the terms and conditions were incorporated by reference into the Stimulation Recommendation . . . . [W]hile unsigned documents may be incorporated into the parties' contract by reference in a signed document, the Stimulation Recommendation was not signed."); *Carr*, 337 S.W.3d at 496 ("Carr relies on two sections of the Operating Agreement that reference the Development Agreement . . . . [However,] Carr does not claim MCD should be compelled to arbitrate under an incorporation by reference theory. In fact, Carr acknowledges this theory would not succeed since MCD did not sign the Operating Agreement.").

Moreover, the Court does consider *One Beacon* to be very persuasive authority in light of its factual similarities and use of Williston on Contracts. *See One Beacon Ins. Co.*, 648 F.3d at 267. Its use of Williston on Contracts is notable because, in *Owen v. Hendricks*, the Texas Supreme Court also considered Williston on Contracts while developing the incorporation by reference doctrine. *See Owen*, 433 S.W.2d at 166–67. Nevertheless, the Court is reluctant to disturb fifty years of uniform application of Texas' incorporation by reference doctrine. *See supra* note 5; *W. Ref. Co. v. TDW Servs., Inc.*, No. EP-12-CV-00475-DCG, 2013 WL 12184239, at *3 (W.D. Tex. Jan. 30, 2013) ("[I]t is uniformly held that an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged."). Accordingly, the Court considers itself bound by Texas precedents until the Fifth Circuit rules on this precise issue.

plain meaning, it impels the conclusion that a signature on the incorporating document is required.

In the instant case, Defendants attempt to incorporate by reference the unsigned Terms and Conditions containing the arbitration clause into unsigned purchase orders. Under Texas law, in order to incorporate the unsigned Terms and Conditions into the purchase orders, the purchase orders must be signed by the party sought to be charged, Plaintiff. Defendants have failed to provide purchase orders signed by Plaintiff to the Court. It is Defendants' burden to prove an agreement to arbitrate. Thus, the Court is compelled to find that Defendants have failed to prove that there was a valid agreement to arbitrate. Accordingly, the Courts DENIES Defendants' Motion to Reconsider.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants Lear Corporation and Lear Mexican Seating Corporation's "Motion to Reconsider December 21, 2016, Memorandum [Opinion] and Order Regarding Arbitration" (ECF No. 48) is **DENIED**.

**So ORDERED and SIGNED this** 22nd **day of February 2018.**

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE